| Debtor 1 | Michael Lee Workman | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Kathy Ann Workman | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Western District of Washington

Case number 18-41652-BDL
(if known)

## Official Form 427
## Cover Sheet for Reaffirmation Agreement                                    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1:    Explain the Repayment Terms of the Reaffirmation Agreement

**1.  Who is the creditor?**

Boeing Employees' Credit Union ("BECU")
Name of the creditor

**2.  How much is the debt?**

On the date that the bankruptcy case is filed    $ 40,154.49

To be paid under the reaffirmation agreement  $ 40,154.49

$_____ per month for _____ months (if fixed interest rate)

**3.  What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed _____ 4.24 % ✓

Under the reaffirmation agreement _____ 4.24 %  ☐ Fixed rate
                                                    ☑ Adjustable rate

**4.  Does collateral secure the debt?**

☐ No
☑ Yes.  Describe the collateral.       Real Property, 204 3rd Street NE, Long Beach, WA 98631

Current market value    $ 125,000.00

**5.  Does the creditor assert that the debt is nondischargeable?**

☐ No
☐ Yes.  Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6.  Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 3541.00 | 6e. Monthly income from all sources after payroll deductions | $ 3541.00 |
| 6b. Monthly expenses from line 22c of Schedule J | $ 3304.00 | 6f. Monthly expenses | − $ 3304.00 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | − $ 0 |
| 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ 237.00 | 6h. Present net monthly income Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ 237.00 |

| 7. Are the income amounts on lines 6a and 6e different? | ☑ No |
| | ☐ Yes. Explain why they are different and complete line 10. _____ |

| 8. Are the expense amounts on lines 6b and 6f different? | ☑ No |
| | ☐ Yes. Explain why they are different and complete line 10. _____ |

| 9. Is the net monthly income in line 6h less than 0? | ☑ No |
| | ☐ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |

**10. Debtor's certification about lines 7-9**

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

X _____     X _____
Signature of Debtor 1          Signature of Debtor 2 (Spouse Only in a Joint Case)

**11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?**

☐ No

☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?

☐ No
☑ Yes

---

**Part 2:    Sign Here**

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

X _Michelle Logston_          Date _06/26/2018_
   Signature                        MM / DD / YYYY

_Michelle Logston_
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

Form 2400A (12/15)

Check one.
☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation,*
*Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

### Western District of Washington

Michael Lee Workman
In re Kathy Ann Workman
                    *Debtor*

Case No. 18-41652-BDL

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Boeing Employees' Credit Union ("BECU")

☑ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: 204 3rd Street NE, Long Beach, WA 98631

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:        $              41,154.49

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before     05/08/2018    , which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is     4.2400 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☐ Fixed rate        ☑ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐     $ __106.66__ per month for _____ months starting on __06/15/2018__ .

☑     Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

       ***Payment above is on a Variable Rate. $106.66 due for the 06/15/18 payment.***

E. Describe the collateral, if any, securing the debt:

       Description:            204 3rd St NE Long Beach WA

       Current Market Value     $             125,000.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral?       $ _____

☑ No. What was the amount of the original loan?       $     40,000.00

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $   40,154.49 | $   40,154.49 |
| Annual Percentage Rate | 4.2400 % | 4.2400 % |
| Monthly Payment | $ _____ | $ _____ |

H. ☐   Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

       Check one.   ☑ Yes     ☐ No

B. Is the creditor a credit union?

       Check one.   ☑ Yes     ☐ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                  $ 3574.00

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                              $ 3197.34

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ 343.66

   d. Amount of monthly payment required for this reaffirmed debt           $ 106.66

   *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to
   pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption
   of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No
   Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your
   dependents because:

   Check one of the two statements below, if applicable:

   [✓]    You can afford to make the payments on the reaffirmed debt because your monthly income is
          greater than your monthly expenses even after you include in your expenses the monthly
          payments on all debts you are reaffirming, including this one.

   [ ]    You can afford to make the payments on the reaffirmed debt even though your monthly income
          is less than your monthly expenses after you include in your expenses the monthly payments on
          all debts you are reaffirming, including this one, because:

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following
statement, if applicable:

   [ ]    You believe this Reaffirmation Agreement is in your financial interest and you can afford to
          make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1)    I agree to reaffirm the debt described above.

(2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date _6/18/18_    Signature _Michael W_____

*Debtor*

Date _6-18-2018_    Signature _Kathy A Workman____

*Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor:

| Creditor | **BECU** | PO BOX 97050, Seattle, WA 98124 |
|---|---|---|
| | *Print Name* | *Address* |
| | Michelle L | Michelle Logston   6/26/18 |
| | *Print Name of Representative* | *Signature*          *Date* |

## PART IV.  CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor, is not a Credit Union.*

Date _6-13-18_  Signature of Debtor's Attorney _____

Print Name of Debtor's Attorney _Susan H. Seelye_

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

## A.   DISCLOSURE STATEMENT

1.   **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.   **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.   **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.   **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5.   **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6.  **When will this Reaffirmation Agreement be effective?**

a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7.  **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B.  INSTRUCTIONS

1.  Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.  Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.  If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.  You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5.  *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

## C.   DEFINITIONS

1.   **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.   **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.   **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

**BECU**
BOEING EMPLOYEES' CREDIT UNION

P.O. Box 97050
Seattle, Washington 98124-9750
(206) 439-5700   FAX (206) 439-8631
(800) 233-2328

## EQUITY ADVANTAGE CREDIT LINE HOME EQUITY SECURED
## OPEN-END CREDIT AGREEMENT AND TRUTH-IN-LENDING DISCLOSURE

Name  Michael L Workman                                    Kathy A Workman
            (Borrower)                                                    (Borrower)

_____          _____
            (Borrower)                                                    (Borrower)

Address of Security Property  204 3rd St NE                 Long Beach            WA        98631
                      (Street)                                   (City)              (State)      (Zip)

Legal Description of Security Property _____  See attached related Deed of Trust/Mortgage

Date of Agreement  December 08, 2012      Loan Number  1893958      Account Number  _____293

Maximum Credit Limit $  $ 40,000.00     Minimum Variable Rate Advance  $ 100.00     Minimum Fixed Rate Advance  $ 5,000.00

Final Date to Request Advance  December 13, 2022       Agreement Maturity Date  December 13, 2037

In this Agreement the use of the words "Credit Union", "We", "Us" and "Our" mean BOEING EMPLOYEES' CREDIT UNION. Any person who signs this Agreement as Borrower, individually and collectively, is sometimes referred to as "You" or "Your". "Account" means the credit available to You under the terms of this Agreement. Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☐

**1  PROMISE TO PAY.** You promise to pay Boeing Employees' Credit Union all amounts You borrow from Us under this Agreement, together with Finance Charges, Late Charges, Collection Costs or other charges described herein.

**2  USE OF YOUR ACCOUNT.** To the extent permitted by law and this Agreement, You may use Your Account for any purpose.

**3  CREDIT LIMIT.** We have granted You a Maximum Credit Limit which is shown above and You agree not to exceed this Maximum Credit Limit. If You do, You will be in default under this Agreement and, in addition to any other rights We may have, We may require You to repay such excess sums immediately. Any amount of credit extended that exceeds the Maximum Credit Limit stated above is not secured by the interest in the Security Property. In the event that Your Maximum Credit Limit is increased, this Agreement will continue in effect subject to the new Maximum Credit Limit.

**4  VARIABLE RATE ADVANCES.** You may request an advance by telephone, in person, via any electronic means authorized by You to Us, by letter, by writing a pre-printed Convenience Check that We may supply to You or by using any other access means that We may provide for Your use from time to time. When You request an advance, We may require You to prove Your identity. Unless Your Account has been suspended by Us, You will have credit available up to Your Maximum Credit Limit. All advances, except for costs related to any voluntary payment protection, must be at least equal to the Minimum Variable Rate Advance amount as shown above and must be made prior to the Final Date to Request Advance, as also shown above. We may refuse to honor any non-conforming advance request and You will then repay such Convenience Check to the payee. If You request an advance by telephone, electronically or some other remote means, We will either make a deposit to Your Regular Share Account, Your Share Draft Account or mail You a check, whichever You specify. In any event, such advances will appear on a subsequent statement which will be conclusive evidence of the request and Your obligation to repay it, unless You establish a billing error pursuant to the Fair Credit Billing Act.

**4A  FIXED RATE ADVANCES.** You may request a fixed rate advance by letter or other written means to access Your Account. Furthermore, You may not have more than three fixed rate advances outstanding at any given time. When You request such an advance, We may require You to prove Your identity. Unless Your Account has been suspended by Us, You will have credit available up to Your Maximum Credit Limit. All advances, except for costs related to any voluntary payment protection, must be at least equal to the Minimum Fixed Rate Advance amount as shown above and must be made prior to the Final Date to Request Advance, as also shown above. We will refuse to honor any non-conforming advance request. If You request an advance, We will either make a deposit to Your Regular Share Account, Your Share Draft Account or mail You a check, whichever You specify. In any event, such advances will appear on a subsequent statement which will be conclusive evidence of Your obligation to repay it, unless You establish a billing error pursuant to the Fair Credit Billing Act.

**5  PAYMENTS (FOR VARIABLE RATE ADVANCES)** Payments will be due on the 15th day of each month that You have a variable rate balance owed on Your Account beginning with the month following the date of Your actual advance. You can obtain credit advances for 120 months (the "Draw Period"). At Our option, We may extend the Draw Period. During the Draw Period, Your Minimum Periodic Payment will be an amount equal to all accrued but unpaid Finance Charges (other than for costs related to any voluntary payment protection) at the close of each billing cycle, subject to the lesser of $100 or Your balance. After the Draw Period ends, You will no longer be able to obtain credit advances (other than costs related to any voluntary payment protection) and You must repay Your outstanding balance (the "Repayment Period"). The length of the Repayment Period will depend on the amount of Your balance when it will exceed 180 months. During the Repayment Period, Your Minimum Periodic Payment will be established on the last day of the Repayment Period (other than costs related to any voluntary payment protection) or change in Interest Rate, to the amount necessary to fully amortize Your then outstanding Account balance by the Agreement Maturity Date, subject to the lesser of $100 or Your balance. Payments will be applied first to any Late Charge owing, then to Finance Charges due, then to the outstanding principal balance. Any unpaid Finance Charges will not be paid by subsequent payments and will not be added to the principal You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment will not delay Your next scheduled payment. All payments to Us must be in lawful money of the United States.

The sum of the Minimum Periodic Payments due for both Variable Rate and Fixed Rate balance(s) is the amount You owe for the billing cycle being accounted for

**5A  PAYMENTS (FOR FIXED RATE ADVANCES)** Beginning with the month following any fixed rate advance, Your scheduled payment for any fixed rate balance will be due on the 15th day of each month beginning on the date set forth on a separate page titled "Equity Advantage Fixed Rate Advance Voucher." You can obtain credit advances for 120 months (the "Draw Period"). During the Draw Period, Your Minimum Periodic Payment for any Fixed Rate advance will be (other than for costs related to any voluntary payment protection) disclosed to You at the time of any such advance on a separate page titled "Equity Advantage Fixed Rate Advance Voucher." After the Draw Period ends, You will no longer be able to obtain credit advances and You must repay Your outstanding balance (the "Repayment Period")

The length of the Repayment Period will depend on the amount of Your last advance but in no event will exceed 180 months. During the Repayment Period Your Minimum Periodic Payment will be (other than for costs related to any voluntary payment protection) calculated in the same manner as during the Draw Period. Any unpaid Finance Charges will be paid by subsequent payments and will not be added to the principal. You may make more frequent payments which will reduce Your Finance Charges. You may also repay or prepay all or any portion of the amounts You owe at any time without penalty. Any partial payment or prepayment of Your Account will not delay Your next scheduled payment. All payments to Us must be in lawful money of the United States. The sum of the Minimum Periodic Payments due for both Variable Rate and Fixed Rate balance(s) is the amount You owe for the billing cycle being accounted for

**6  FINANCE CHARGES.** You will be charged a Finance Charge at a Variable Periodic Rate and/or Fixed Periodic Rate for the period any balance is outstanding. Balance(s) change each time advances are made, payments are made or credits given. The Finance Charge begins to accrue on the date of each advance and there is no grace period. The Finance Charge is determined by multiplying the unpaid balance at the close of each day in the billing cycle being accounted for by the Daily Periodic Rate. The balance used to compute the Finance Charge is the unpaid balance each day after payments, credits and unpaid Finance or Late Charges have been subtracted and any new advances, voluntary payment protection costs and or other charges have been added. The sum of these charges is the Finance Charge You owe. On the date Your Account is established FINANCE CHARGES will be computed using a Variable Daily Periodic Rate of  0.010932 %,

corresponding to an ANNUAL PERCENTAGE RATE of  3.99 %.

For the applicable Daily Periodic Rate and corresponding Annual Percentage Rate for Fixed Rate advances refer to the separate page titled "Equity Advantage Fixed Rate Advance Voucher" which We will provide to You at the time of any such advance

**7  VARIABLE RATE.** If Your balance is subject to a Variable Rate it is based on the Prime Rate as published in the The Wall Street Journal in effect on the last day of each month ("Index") plus ☒  -0.51 % ("Margin") with automatic payment from Your Share/Share Draft Account or ☐  -0.01 % ("Margin") without automatic payment from Your Share/Share Draft Account. The Index plus the Margin equals the Interest Rate. Changes in the Index will cause changes in the Interest Rate on the first day of each month immediately following any such change in the Index. Increases or decreases in the Interest Rate will result in like scheduled payments. The Margin applicable to Your Account will immediately increase to the level shown herein if You have signed up for automatic payment from Your Share/Share Draft Account and You subsequently discontinue such service or in the event that We are unable to transfer the necessary payment amount from Your Share/Share Draft Account for any reason. An increase in the Margin will result in an increase in the Daily Periodic Rate of 0.001370% (corresponding to an increase in the ANNUAL PERCENTAGE RATE of 0.50%). The Annual Percentage Rate does not include costs other than interest. Your Interest Rate is subject to a minimum of (a)  3.99 % with automatic payment from Your Share/Share Draft Account, or (b)  4.49% without automatic payment from Your Share/Share Draft Account and a maximum of 18.00% and will apply to the remaining principal balance. If the Index becomes unavailable, We may select another Index and Margin which would result in a substantially similar Interest Rate

You acknowledge that You have received and read a completed copy of this Agreement (including the information on the reverse side) and You agree to its terms

_Michael Workman_ (signature)         12/8/12          _Kathy A Workman_ (signature)         12/8/12
Borrower  Michael L Workman        Date                 Borrower  Kathy A Workman         Date

_____  _____    _____  _____
Borrower                            Date              Borrower                            Date

**ACKNOWLEDGMENT BY NON-BORROWER WHO WILL EXECUTE A MORTGAGE/DEED OF TRUST**
The undersigned will be executing a Mortgage/Deed of Trust on the Security Property shown above in favor of BOEING EMPLOYEES' CREDIT UNION, but will have no personal liability under the above Agreement. The undersigned acknowledges receipt of a completed copy of this Agreement

_____  _____    _____  _____
                                   Date                                          Date

Copyright Oak Tree Business Systems, Inc. 1997-2008 All Rights Reserved

EA 00

OTBS 020 New BECU (11/08)

**8 SECURITY** Your Account is secured by a Mortgage/Deed of Trust You have given Us on the Security Property described above as well as the proceeds of the sale of such Security Property Except as stated herein, Your Account is not secured by any other collateral, real or personal, tangible or intangible As permitted by law, to secure all transactions under this Agreement in either joint or individual Accounts, We have the right to impress and enforce a statutory lien against Your shares on deposit with Us other than those deposits established under a governmental approval tax deferral plan such as an IRA or Keogh account), and any dividends due or to become due to You from Us to the extent that You owe on any unpaid balance on Your Account(s) and We may enforce Our right to do so without further notice to You Additionally, You agree that We may set-off any mutual indebtedness

**9 OTHER CHARGES** In addition to the Finance Charges, Your Account is subject to certain other charges which You agree to pay either separately or as a result of advances made to Your Account (e means estimate)

| BECU Loan Cost (Paid to Credit Union) | $ | 0 00 |
|---|---|---|
| Appraisal Fee | $ | 0 00 |
| Federal Express | $ | 0 00 |
| Escrow/Settlement | $ | 0 00 |
| Tax Service | $ | 0 00 |
| Recording Fees | $ | 0 00 |
| Title Examination Fees | $ | 98 01 |
| Title Insurance | $ | 0 00 |
| Other | $ | |
| | $ | |
| **Total of Charges** | $ | **98.01** |

**10 COLLECTION COSTS** To the extent permitted by law, You agree to pay all costs of collections, including attorneys' fees whether or not suit is filed, and other costs, including court costs

**11 LATE CHARGES** If Your payment is 10 or more days late, You will be charged a late charge in the amount of 5 00% of the payment amount or $25 00, whichever is greater

**12 OTHER FEES AND CHARGES** You will be charged $25 for any check (or other negotiable instrument used for payment) which is returned unpaid

**13 PROPERTY INSURANCE** You agree to insure the Security Property against fire and other hazards, in the amount and for the period required by Us, with Us named as Mortgagee for Our protection You may purchase this insurance from any insurer You want, but We have the right not to accept the insurer for reasonable cause If You do not get or keep such insurance, We may (but are under no obligation to do so) obtain it and add the costs to the principal balance of Your Account and You agree to pay for it

**☒ 14 OCCUPATION OF THE SECURITY PROPERTY** You represent that You currently occupy the Security Property identified in this Agreement as Your principal residence and You agree that You will continue to do so throughout the term of this Agreement

**15 TERMINATION** If You fail to meet the terms of repayment, or if You act or fail to act in a way that adversely affects Our security interest or other rights in the Security Property, or if You have committed fraud or made a material misrepresentation in connection with the Account (such as failing to occupy the Security Property as Your principal residence after warranting that You would do so on the application for Your Account), We may terminate this Agreement and require You to pay Us the outstanding balance in one payment, or subject to the Governing Law, cause the Security Property to be sold and the proceeds of sale to be applied to Your obligation to Us To the extent permitted by law, You agree to pay any reasonable costs of protecting, retaking repairing or selling the Security Property

**16 SUSPENSION** Your right to request additional advances may be suspended, or Your Maximum Credit Limit reduced, at Our option in the following instances

(1) You fail to make the scheduled payments due to Us, (2) You fail to make timely payments to the holders of Mortgage/Deeds of Trust senior to Ours, (3) You fail to pay real property taxes prior to delinquency, (4) You fail to maintain the required property insurance, (5) You are in default of any material obligation under the terms of this Agreement (such as failing to occupy the Security Property as Your principal residence), (6) the value of the Security Property declines significantly below the appraised value upon which We relied in approving Your application, (7) We reasonably believe that Your ability to meet Your payment obligations is impaired because of a material change in Your financial circumstances, (8) Governmental action precludes Our imposing the Interest Rate provided herein or adversely affects the priority of Our Security Interest such that the value of Our interest is less than 120% of Your Maximum Credit Limit, (9) the maximum Interest Rate under this plan is reached, or (10) Government regulatory authorities find that further advances under this plan constitute an unsafe and unsound practice When the condition which caused the suspension of advances or reduction of Your Maximum Credit Limit no longer exists, the original terms of this Agreement will be reinstated You understand that if Your right to request additional advances is suspended or Your Maximum Credit Limit is reduced, You still owe Us whatever sums You have already borrowed, all other charges under this Agreement and applicable Finance Charges

**17 CHANGE IN TERMS.** We may change the terms of this Agreement upon proper notice to You in the following situations (1) as provided in this Agreement, (2) to adopt a new index if the current index becomes unavailable, (3) by written agreement with You, (4) if the change benefits You, or (5) the change is insignificant

**18 LIMITATIONS ON THE USE OF CONVENIENCE CHECKS.** We reserve the right not to honor any Convenience Check if (1) by paying a Convenience Check You would exceed Your Maximum Credit Limit, (2) Your Convenience Check is post-dated We are not responsible for any resulting loss or liability, however, if any such Convenience Check is honored and, as a result, any other Convenience Check is returned unpaid, (3) Your Convenience Checks have been reported lost or stolen, (4) Your Convenience Check is not signed by a Borrower under this Agreement, (5) Your Account has been suspended or terminated as provided for in this Agreement or could be if a particular Convenience Check were to be honored, (6) Your Convenience Check is less than the Minimum Variable Rate or Minimum Fixed Rate Advance as shown in this Agreement, and/or (7) You are in violation of any transaction requirement or would be if We honored Your Convenience Check

**19 ADDITIONAL INFORMATION** You agree that You will promptly tell Us in writing if You move, change Your name, or change Your employment You will also provide Us updated financial information upon Our request

**20 DELAY IN ENFORCEMENT** We can delay enforcing any of Our rights under this Agreement without losing them We can accept late payments, partial payments, or any other payments even if they are marked "paid in full", without losing any of Our rights under this Agreement

**21 SEVERABILITY** If any provision of this Agreement is held to be unenforceable, such determination shall not affect the validity of the remaining provisions of this Agreement

**22 LIABILITY OF PARTIES.** Each Borrower will be responsible, jointly and severally, for the repayment of amounts owed

**23 TAX DEDUCTIBILITY** You should consult a tax advisor regarding the deductibility of interest and charges under Your Account

**24 VOLUNTARY PAYMENT PROTECTION** Voluntary payment protection is not required for any extension of credit under this Agreement However, if You purchase voluntary payment protection through Us, You authorize Us to add the cost of such voluntary payment protection to Your balance each month, and You agree to pay these costs in addition to Your Minimum Periodic Payment If You elect to purchase voluntary payment protection, You understand that the entire Account balance must be covered and that You will be given the necessary disclosures and documents separately The rate used to determine Your cost may change in the future If rates change, We will provide anynotices required by law Please refer to the separate disclosures and documents for details

**25 GOVERNING LAW** This Agreement is controlled and governed by the laws of the State of Washington except to the extent that the laws of the state where the Security Property is located governs property rights related to the Security Property and except to the extent that such laws are inconsistent with controlling federal law

---

**YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about Your rights and Our responsibilities under the Fair Credit Billing Act

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT**

If You think Your statement is wrong, or if You need more information about a transaction on Your statement, write Us on a separate sheet, at Our address shown in this Agreement Write to Us as soon as possible We must hear from You no later than 60 days after We send You the first statement on which the error or problem appeared You can telephone Us, but doing so will not preserve Your rights

In Your letter give Us the following information
- Your Name and Account Number
- Dollar amount of the suspected error
- Describe the error and explain, if You can, why You believe there is an error If You need more information, describe the item You are not sure about

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE**

We must acknowledge Your letter within 30 days, unless We have corrected the error by then Within 90 days, We must either correct the error or explain why We believe the statement was correct

After We receive Your letter, We cannot try to collect any amount You question, or report You as delinquent We can continue to bill You for the amount You question, including Finance Charges, and We can apply any unpaid amount against Your Credit Limit You do not have to pay any questioned amount while We are investigating, but You are still obligated to pay the parts of Your statement that are not in question

If We find that We made a mistake on Your statement, You will not have to pay any Finance Charges related to any questioned amount If We didn't make a mistake, You may have to pay Finance Charges, and You will have to make up any missed payments on the questioned amount In either case, We will send You a statement of the amount You owe and the date that it is due

If You fail to pay the amount that We think You owe, We may report You as delinquent However, if Our explanation does not satisfy You and You write to Us within 10 days telling Us that You still refuse to pay, We must tell anyone We report You to that You have a question about Your statement and We must tell You the name of anyone We reported You to We must tell anyone We report You to that the matter has been settled between Us when it finally is

If We don't follow these rules, We can't collect the first $50 00 of the questioned amount, even if Your statement was correct

Return Address:

DATAQUICK
5300 Brandywine Pkwy, Ste 100
Wilmington, DE 19803

9

———————(Space Above This Line For Recording Data)———————
# DEED OF TRUST      *1893958*
## (OPEN-END CREDIT - THIS DEED OF TRUST SECURES FUTURE ADVANCES)

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 6, 8, 13 and 15. Certain rules regarding the usage of words used in this document are also
provided in Section 11.

(A)"Security Instrument" means this document, which is dated  December 08, 2012
(B)"Borrower" is
Michael L Workman and Kathy A Workman, husband and wife, as Community Property


Borrower is the trustor under this Security Instrument.
(C)"Lender" is Boeing Employees' Credit Union. Lender is a Credit Union organized and existing
under the laws of the State of Washington. Lender's address is P.O. Box 97050, Seattle,
Washington 98124-9750. Lender is the beneficiary under this Security Instrument.
(D)"Trustee" is  Regional Trustee Services Corporation
(E)"Agreement" means the Credit Line Account Variable Interest Rate Home Equity Secured
Open-End Credit Agreement and Truth-In-Lending Disclosure signed by Borrower and dated
December 08, 2012            . The Agreement states that Borrower may, from time to time, obtain
advances not to exceed at any time an amount equal to the Maximum Credit Limit (as defined therein) of
Forty thousand and 00 / 100************
Dollars (U.S. $  40,000.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  12/13/2037                 .
(F)"Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

Loan Reference Number:  ⬤⬤⬤⬤7293


Abbreviated Legal Description:
L2, B9, Tinker's N Add Long Beach, V D1, P9, Pacific Co, WA


Assessor's Property Tax Parcel Number:  730110090 02


(G) "Loan" means the debt owed under the Agreement, plus interest, any late charges or other fees
and charges due under the Agreement, and all sums due under this Security Instrument, plus interest.
(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

OTBS 093 WA 12/2008
(6/07)
OTBS (8/07)
(page 1 of 9)

3142816     12/20/2012 12:44:44 PM  Pg. 1 of 9
Deed Of Trust     Data Quick Lending Solutions
Pacific County Auditor's Office        Fee: $81.00

(K)"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 3) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(L) "**Periodic Payment**" means the regularly scheduled amount due for principal and interest under the Agreement.

(M) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Agreement; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Agreement. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          County         of        Pacific       :

[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]

LOT 2, BLOCK 9, TINKER'S NORTH ADDITION TO LONG BEACH, ACCORDING TO THE PLAT THEREOF ON FILE IN VOLUME D-1 OF PLATS, PAGE 9 IN THE OFFICE OF THE AUDITOR OF PACIFIC COUNTY, WASHINGTON.

which currently has the address of           204 3rd St NE

Long Beach      , Washington      98631      ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Late Charges or other Fees and Charges.** Borrower shall pay when due the principal of, and interest on, the debt owed under the Agreement and late charges or other fees and charges due under the Agreement. Payments due under the Agreement and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 10. Lender may return any payment or partial payment if the payment or partial

payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 16 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Agreement immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Agreement and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

3. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Borrower shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the rate chargeable for advances under the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 16 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement or this Security Instrument, whether or not then due.

4. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

5. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If: (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations); or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

6. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds

multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 14, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

7. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

8. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 13. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but is not personally liable under the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

9. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

10. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been

given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**11. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**12. Borrower's Copy.** Borrower shall be given one copy of this Security Instrument.

**13. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 13, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 10 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**14. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 13.

**15. Hazardous Substances.** As used in this Section 15: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property: (a) that is in violation of any Environmental Law; (b) which creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property

and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

16. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Agreement under which acceleration is permitted (but not prior to acceleration under Section 13 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 16, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

17. Reconveyance. Upon payment of all sums secured by this Security Instrument and termination of Borrower's ability to obtain further advances under the Agreement, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and the Agreement evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

18. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

19. Use of Property. The Property is not used principally for agricultural purposes.

20. Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Witnesses:

_____
Owner of Collateral (other than Borrower)

_____ (Seal)
Michael L. Workman                    -Borrower

_____
Owner of Collateral (other than Borrower)

_____ (Seal)
Kathy A Workman                       -Borrower

_____
Owner of Collateral (other than Borrower)

_____ (Seal)
                                      -Borrower

_____
Owner of Collateral (other than Borrower)

_____ (Seal)
                                      -Borrower

STATE OF WASHINGTON,                    County ss:  Pierce

On this 8th day of December 2012, before me the undersigned, a Notary Public in and for the State of
Washington, duly commissioned and sworn, personally appeared

Michael L Workman and Kathy A Workman

to me known to be the individual(s) described in and who executed the foregoing instrument, and
acknowledged to me that signed and sealed the said instrument as their free and voluntary act and
deed, for the uses and purposes therein mentioned.

WITNESS my hand and official seal affixed the day and year in this certificate above written.

My Commission expires:    12-6-15

(Seal)

STEVE RYDGREN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
12-06-15

Notary Public in and for the State of Washington residing at:
Puyallup

**REQUEST FOR RECONVEYANCE**

To Trustee:
     The undersigned is the holder of the Agreement secured by this Deed of Trust. Said Agreement,
together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are
hereby directed to cancel said Agreement and this Deed of Trust, which are delivered hereby, and to
reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or
persons legally entitled thereto.

Date: _____

Copyright Oak Tree Business Systems, Inc., 1997-2008. All Rights Reserved.